[Crim. No. 1971. Second Appellate District, Division One.—February 16, 1931.]

THE PEOPLE, Respondent, v. THOMAS C. BREITEN-STEIN, Appellant.

W. Joseph Ford and Peter J. Youngdahl for Appellant.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Buron Fitts, District Attorney, and Arthur Veitch, Deputy District Attorney, for Respondent.

HOUSER, J.—In each of four counts of an indictment, defendant Breitenstein and three other persons respectively named Earle, Ward and Ducey were charged with the commission of the crime of grand theft. Earle was the city engineer of the city of Pasadena; Ward was his assistant, and the two defendants Ducey and Breitenstein were partners engaged in said city in the business of contracting in matters affecting various kinds of street improvements. It appears that two several contracts for street improvement work were entered into between the city of Pasadena and the contracting firm of Ducey & Breitenstein. The evidence adduced on the trial of the action shows that under each of two separate contracts, double payments were made by said city to Ducey & Breitenstein, apparently for "extra" work supposedly not in the contract between the parties, when as a matter of fact such work actually was stipulated therein. Each of such double payments formed the basis of one of the counts in the indictment herein. Each of the other two charges against the defendants arose out of the same two contracts between the interested parties and each was based upon a payment of money to the firm of Ducey & Breitenstein for alleged intentional overmeasurements of square feet of cement work, pavement, etc., constructed for said city by said firm of contractors.

The theory of the prosecution was that as to the payments of money made for alleged "extra" work, they were received by Ducey & Breitenstein as a result of a criminal concert of action between them and defendant Earle; and that each of the other two payments was accomplished by means of connivance or conspiracy among all the defendants.

For the reason that the action was dismissed as to defendant Ward, who thereupon became a witness for the People, and for the further reason that on account of the personal illness of the defendant Ducey, which resulted in his inability to be present at the time when the trial was had, the action was tried as against defendants Earle and Breitenstein only. From a judgment of conviction against each of such defendants on each of the charges preferred against them, as well as from an order by which their motion for a new trial was denied, defendant Breitenstein has appealed to this court.

■ The first point presented by appellant as a sufficient reason for a reversal of the judgment is that "the court erred in admitting against defendant Breitenstein the testimony of defendant Ward as to conversations between Ward and Earle outside the presence and hearing of said defendant Breitenstein, without any proof of conspiracy, except that contained in such conversations themselves".

As a necessary prerequisite to a determination by the jury that the defendants were guilty of the offense of which they were charged, among other rules of law the court instructed the jury that it must find that by means of false and fraudulent representations and pretenses the defendants actually defrauded the city of Pasadena at the times and in the manner alleged in the indictment against them. From the nature of the case and the facts adduced in evidence, it is manifest that the criminal offense of which the defendants were charged could have been committed only as a result of some corrupt agreement or understanding entered into between or among some or all of the defendants. Assuming that a sufficient total of evidence was introduced on the trial of the action to warrant the determination by the jury that a conspiracy to defraud the city of Pasadena as alleged in the indictment existed, the possible fact that at the time the witness gave the testimony to which appellant here objects, the evidence was lacking in quantity and quality to justify such a conclusion—would present no sufficient reason for a determination by this court that defendant had been prejudicially injured by the reception of such testimony at the time it was given. In other words, the "order of proof" is of no consequence, provided that no abuse of discretion be exercised by the trial court in directing the admission of such evidence at the time it is submitted to the jury for its consideration. (5 Cal. Jur. 514.) So here, if at the time defendant Ward gave his testimony regarding certain alleged conversations which took place between him and defendant Earle outside the presence of defendant Breitenstein *prima facie* proof of the existence of the conspiracy had not been presented to the trial court, that fact in itself would create no substantial prejudice against defendant Breitenstein, provided that before the termination of the trial sufficient evidence was introduced from which a conclusion might legally have been reached that by means of a conspiracy so to do the defendants had

committed the offense for which they were then on trial. Unquestionably, evidence was introduced from a consideration of which the jury was authorized to conclude that the city of Pasadena had been defrauded in each of the particulars alleged in the several counts of the indictment. Also, that as to the "extras" in each of the two counts which were the subject of inquiry, the several acts of defendant Earle were directly and largely responsible; and that as to the other two counts the overpayments therein alleged, based on fraudulent estimates of the work done by defendants Ducey and Breitenstein, were directly traceable to both Earle and Ward. In the latter connection, unobjectionable evidence showed that Ward raised the figures on each of such jobs and gave to Earle the correct figures as well as those which were false, at which times either Earle or Ward subtracted the correct estimate from that which was false. In addition thereto, one of the witnesses testified to a conversation which he asserted had occurred between him and Breitenstein with reference to the work done by Ducey & Breitenstein under the provisions of one of the contracts in question, in which Breitenstein said to the witness, "plans don't amount to anything on this job". The witness also testified that he compiled a progress report on the work done on said job, and frequently talked with Breitenstein regarding the work done and the measurements of such work; that Breitenstein would approach the witness and ask him how the job was running, and that he would then be told exactly how it ran; that Breitenstein would be given the number of square feet of concrete put in and the amount of material used in the work; that he would thereupon figure the amounts, put notes in his book, and that Breitenstein was furnished with notes all the time. The witness further testified that Breitenstein had told him that he and defendant Ducey had brought Earle from the city of San Diego to the city of Pasadena and had Earle appointed city engineer of the latter city; furthermore, that any inspector who "sat on the firm of Ducey & Breitenstein too strong" would, through their influence, be removed by Earle, and that several had already been removed. The witness continued that Breitenstein had told him not to consult with a certain engineer in the office of defendant Earle on any technical points, but to consult defendant Ward; that the employee to whom Breitenstein referred was "too

nosey; that he was a nosey kind of a fellow, having no standing in the city hall, and not to furnish him with any information". Another witness, who was an inspector of the "extra" work for the city of Pasadena, testified that he furnished Breitenstein with the figures on the concrete work done on one of the jobs in question, and that Breitenstein kept the figures in a little memorandum book; that Breitenstein at no time told such witness that his figures were wrong; that the witness gave Breitenstein the square or lineal feet of cement work done the day before, and that Breitenstein usually called on the job and received these figures "in the morning". It also appeared in evidence that defendant Earle caused the checks which represented the several payments of moneys which were the basis of the instant prosecution to be drawn on behalf of the city of Pasadena in favor of defendants Ducey and Breitenstein. Shortly thereafter, a part of a conversation had between Ward and defendant Breitenstein included the following: Defendant Ward testified to a conversation with defendant Breitenstein as follows: "I says, 'Well, you finally got around—' I can't call that inspector's name now,—the chief inspector of the Light Department,—and he said, 'Yes,' and I said, 'Well, I think he was a little bit off of his pins, or something like that,—and a little bit too far fetched, and wanted to be hard on the Linda Vista job,' and we talked about that, and in a few minutes I said, 'How did you manage to get those large bills without suspicion?' and he told me that they were cashed and brought down from San Francisco by a bond salesman."

Without attempting to detail the evidence adduced with reference to the two counts which were founded on the alleged fraudulent collection by Ducey & Breitenstein from the city of Pasadena for "extra" work claimed to have been performed by Ducey & Breitenstein, it is sufficient to state that from the evidence the jury was authorized to draw the conclusion that in fact the work which was covered by such "extras" was specified and included in the contract, and consequently that the contractor could not properly be compensated for such performance other than as was provided in the contract itself. Furthermore, although the evidence given by defendants relating to the matter conflicted with that introduced by the prosecution, the jury, as the sole judge of the credibility of the witnesses,

had the power to determine, and upon it was thrust the duty of determining, whether the payments for such "extras" were the result of an innocent mistake on the part of defendants, or whether they were deliberately and knowingly accomplished by them with the fraudulent intent of securing to themselves certain sums of money to which they were not justly and honestly entitled. The latter conclusion manifestly having been reached by the jury, the further conclusion that a conspiracy must have existed as between defendant Earle and Ducey and Breitenstein necessarily would follow. In such circumstances, the authorities are unanimous in the declaration of the legal principle which would include a ruling that the testimony given by Ward as to certain alleged conversations which occurred between him and defendant Earle, and which are the subject of the objections interposed by defendant Breitenstein on the trial of the action and by him reiterated in this court, was admissible not only as against defendant Earle, but as well against defendant Breitenstein.

What hereinbefore has been said necessarily presents by inference a ruling against defendant's contention to the effect that the testimony given by Ward was not corroborated. Furthermore, although by the provisions of section 1111 of the Penal Code, a conviction of a defendant cannot be had solely upon the testimony of an accomplice, the authorities of this state are numerous to the effect that, even though but slight, and standing alone entitled to but little weight, if the corroboratory evidence but tend to connect the defendant with the commission of the offense, it measures up to the statutory requirement. (*People* v. *Kelly,* 69 Cal. App. 558, 570 [231 Pac. 767], and authorities there cited.)

Appellant also predicates error upon the assumed fact that no evidence was introduced by which it was established that any false pretenses were made by defendant Breitenstein to the city of Pasadena. But assuming the existence of a conspiracy among the several defendants to fraudulently procure the payment of money by the city of Pasadena to the firm of Ducey & Breitenstein, it was immaterial which of the several defendants actually made the false representations. After the formation of the conspiracy, and preceding its consummation, each of the conspirators was liable for each and all of the acts of each of his co-

conspirators performed in furtherance of the conspiracy; and the evidence is ample to sustain the conclusion that principally by the acts of defendant Earle the city of Pasadena was induced to and actually did part with the money which by the indictment herein it is alleged was paid to Ducey & Breitenstein.

The specification by appellant that the city of Pasadena did not rely upon any representation which may have been made by defendant Breitenstein and was not thereby induced to part with the money in question, is fully answered by the situation that defendant Breitenstein was liable for Earle's acts in the premises, and that it was directly through and because of the representations made ·by the latter to the city manager of the city of Pasadena that the several checks which authorized the payment of the several sums of money to defendants Ducey and Breitenstein were issued.

Finally, appellant complains that the trial court erred in denying his motion for a new trial which was based on the ground of "newly discovered evidence". From an examination of the affidavit presented in the trial court on the hearing of the motion, it becomes apparent that no sufficient excuse was shown for the failure of defendant to produce the proposed "new evidence" at the trial of the action.

Furthermore, such "newly discovered evidence" affected but one detail in the mass of evidence adduced by the prosecution which tended to establish the guilt of the defendants, and it is inconceivable that for that reason had the evidence been introduced on the trial of the action, the defendants, or either of them, would have been acquitted as to any or either of the several charges against them, or that the verdict of the jury would have been in anywise affected by such "newly discovered evidence". In addition thereto, it is a universal rule that the granting of a new trial on the ground of "newly discovered evidence" rests in the sound discretion of the trial court. The record herein presents no evidence that in denying the motion the trial court abused its discretion.

The judgment and the order by which the motion for a new trial was denied are affirmed.

Conrey, P. J., and York, J., concurred.

754

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 16, 1931.